Okay. I noticed you have a lot of people at your table. Are you going to be the only one arguing? Yes, Your Honor. Okay. All right. Generally, we let other lawyers there, but we don't usually let clients there, are we? All lawyers, all co-counsel. Okay. Thank you. Good morning, Your Honors. May it please the Court. Richard Salgado on behalf of the Plaintiff Appellants, and I'm going to try to reserve three minutes. It's well established that a case is only moot when it's impossible for a court to grant any effectual relief. If there's still a live controversy, the case is not moot. Another formulation of that rule is that a case is only moot when it's absolutely clear that the alleged harm could not reasonably be expected to occur. Here, the district court erred by dismissing my client's case even though there is still effective relief a court could grant. That includes, and at a very high level, I'll cover this more detail later, and includes funding incentives, compensation Well, I guess you have one. You had the passage of SB 819. What further relief could the district court grant on plaintiff's claims of lack of data collection, monitoring compliance, and changing funding formula to discourage SSDs? Sure. Absolutely, Your Honor. I should, to back up just one moment, if I may, again, the passage of 819 also points to the fundamental error that the court made in applying a presumption of mootness. I'll circle back to that, if I have a moment. But to answer your question directly, even under 819, there are various gaps that 819 did not address that are points of relief that my clients were seeking in the court below and have still not been delivered, have still not been received. You mentioned funding, for example. At the funding level, there's a perverse incentive right now because school districts receive the same amount of federal IDEA funds whether a student is in school for one hour or seven hours. It doesn't make a difference. Well, did SB 819 provide for additional resources and trainings to encourage school districts to not overuse SSDs? It provided additional, some additional resources. It provided, now again, the allocation of funding. If you spread that out across all the districts in Oregon, it does not go that far. But, yes, 819 is a good bill. 819 did good things. It was a stride in the right direction. But the challenge there is 819 still fell short of actually delivering the relief that was necessary here. Because for years what's been happening is that Oregon has essentially dug itself into a hole on this by having this systemic practice that's depriving these children with disabilities of receiving their FAPE, of receiving the education they're entitled to. And so when you try to fix that, there's a long way to go. And 819 does good things. But going back to the funding, for example, there was a neutral expert, Dr. Bateman, who was brought in during the pendency of this case in the court below. And Dr. Bateman did an extensive evaluation of this. Again, this is a neutral, neither side was on that. He did an extensive analysis and he made recommendations. Those recommendations all reflect forms of the relief that my clients believe and argue are necessary and essential in order to bring the state's practice into compliance with IDEA. Well, let's just continue with your example regarding the formula. Let's just say I agree with you that the formula encourages misuse of SSDs. But it seems that how can we order the Oregon Department of Education to change the funding formula unless it violates IDEA? I.e., you could ask for some relief, but that relief may not be necessary to comply with IDEA. They could find other forms of relief and bring it into compliance. So it seems to me as a fundamental matter, we've got to determine if there actually is a violation of IDEA after the passage of SB 819. I agree, Your Honor. It's a merits question. That's exactly the point here, is that there is a possibility that a court on the merits after a full evaluation of this could come to a determination that my clients, their needs are met, that the relief is sufficient, and the IDEA is satisfied. The reality, though, is there's a mandate on the Oregon Department of Education to ensure these things. And what we have is we have clear claims for relief that our position is bound up as a matter of question of fact, as a question that has to be decided here, that until that's decided, they're not receiving. The systemic problems are not cured. They're not fixed. They're ongoing. If I can interrupt you. So what should we do if we agree with you, then? It's not moved. Then do we remand it, have open it for limited discovery, and figure out if there's merit, any merits to it, and the State can then move for summary judgment, and the district court decides it? Is that what we should do? Absolutely, Your Honor. It would be a remand where you go back down. I think the timing here is also really important. SB 819 was enacted, and then it was only a matter of months before the State moved to dismiss this on mootness grounds. And the Court ruled on that. There was not enough time. We all know a new statute being implemented, it's an aircraft carrier trying to turn one of those. And it takes a while for anything to be implemented here. And in this instance, absolutely. We need to see what has happened. The challenge here, this also points to the challenge, the district court made a fundamental error in that it applied a presumption of mootness based on the Chambers case. And again, in the Chambers case there, there's a statute that did not account for ERISA, for ERISA preemption. But you're not challenging the legislation, right? Absolutely right, Your Honor. We're not challenging it. Oh, that's why you're saying the presumption of mootness should not apply? Absolutely. Is that my right? You have it 100 percent correct. That is exactly it. But the district court unfortunately missed that. And it quotes it, and then it relies on it, and it turns back on it. And unfortunately, that presumption infects the entire decision. There's one point on page 24, I think, in the district court's opinion, where on one bucket of relief it says, well, 819 didn't account for this, so I'm not going to apply the presumption here. Well, so just going back to what Judge Lee said, hypothetically, we don't conference about these cases before, so I don't know what the panel's going to do. So I'm going to say hypothetically. But let's say hypothetically we agree with you that if properly considered, its mootness was not satisfied. But it looks like in there that probably some things might be fixed. So is the remedy, do we have to even figure that out, or do we just say it's not moot, go back, district court, look at what is covered, what isn't covered, and make a determination? Exactly. But we don't have to hear, we would not have to hear say, okay, well, one, two, and, you know, one, two, and three are moot, and, you know, four, five, and six are not. That's exactly right. Because I suspect, although it's, I mean, I'm just speaking for myself, I suspect that some things, 819 probably did moot out some things. It may have. But that doesn't mean that your case is moot. Correct, Your Honor. It may have mooted out some things, and there's certainly some things that may have been fixed. But again, the challenge going back was never to SB 263. The challenge has always been at the implementation level. It's always been at are the districts doing this? Is ODE actually making the districts do this? And so it really goes to that level. So I would agree that 819 was a great step. It did good things. Did it moot the whole case? No. Not even close. And this isn't one where the court needs to go down into the minutiae of IDEA or 504 or ADA. This is simply a matter of going back and saying, well, this is actually, there's fact questions bundled up in here that need to be figured out. There was a quote in the district court's decision on the original motion to dismiss. So this goes back years ago, where the district court correctly stated, the ultimate scope of the remedy involves determinations that can only be made after all parties have presented their evidence at trial. That was, again, on the motion to dismiss stage the first time the state tried to move here years ago. That same principle still applies. 819 has come in, but there's still a bundle of fact questions that are directly going into the merits here that the court has simply not reached here. So if you go back and there's an amended complaint, your client could still prevail, regardless of SB 819, on the fact that there's still a violation of IDEA or Title II of the ADA or Section 504. Is that correct? Absolutely correct, Your Honor. And right now, we know, as we stand here right now, there are still hundreds of children in Oregon who are still on shortened school days. Now, I hesitate to say that because I don't want to conflate that with saying that means that those are violations. Judge, if I can ask you another question. A few times in your briefs, you say the government hasn't monitored compliance or hasn't ensured that the reporting is being done. That's not based on a statutory requirement that requires compliance, but rather you're saying that because they're not doing it, it effectively denies a FAPE or IDEA. Is that what it is? Correct, Your Honor. So there's no actual direct compliance requirement. It's just that by not doing it, it may lead to longer, shortened days, et cetera. Correct. If you don't know what's going on, there's no way to actually monitor and enforce. And then, I think Judge Resch kind of hinted at this. So should we, I mean, maybe ultimately it's a district court's decision, but should there be a limited amendment of complaint, not necessarily to craft new theories of the case, but put some facts, allegations to put the defendant on notice, they know if they're going to try to move for summary judgment or a trial, they know what you're alleging? I think that could be appropriate. I think that there have been changed circumstances here for sure. And even while this case has been pending, we now have the benefit of SB 819 being on the books now for this past year, two years, that we can actually look and see has implementation been happening. That can be evaluated. So that actually gives us a discovery opportunity as well. So I think that this really is, again, it fundamentally comes back to the idea here that the court simply ruled on a mootness standard where there was a merits determination really underlying all of that. And instead, it got unplugged. And so the court never actually reached that. I think that I've gone through what I have to share. Well, why don't you reserve the balance for rebuttal and see how your friend on the other side responds to what you've said. Thank you, Your Honor. Good morning. Good morning. May it please the Court, Counsel Jordan Silk for the Oregon Department of Education and the other State Appellees. The Federal Judiciary is not a policymaking branch of government. And indeed, the IDEA doesn't mandate any specific policy choice that states are required to make. It grants broad, it grants states broad policymaking discretion to implement the IDEA's general standards. Counsel, let me just, I agree with you on that point. We don't want to be a policymaking branch. But the problem here is there's been no underlying determination as to whether everything that's in place now, whether it be the prior and what's, the prior processes and checks and balances, the internal controls, if you will, and SB 19, whether there's actually been a determination as to whether there's still a violation. So it's not that we want to do the policy and try to tell you what relief. That was my question to your friend. You know, he may not be entitled to certain relief because it's already covered by some other relief under SB 819. The nuance in this case is that the systemic nature of the plaintiff's claims makes this situation such where the plaintiffs in this case sought injunctive relief alleging a systemic claim. So it's saying, State of Oregon, your lack of data collection monitoring, centralized statewide data collection monitoring enforcement policies, your lack of those policies is creating a risk of inappropriate placement on shortened school days. Well, our decision here is whether 819 mooted this lawsuit and the district court said yes. It would appear to me that the district court may have erred in applying the presumption of mootness in its voluntary succession analysis because, as I discussed with your friend on the other side, they're not challenging the specific legislation. So what is your best authority for applying the presumption of mootness in a case where plaintiffs are not challenging specific legislation? Well, I would kind of push back on the premise there because, I mean, if plaintiff's position is that there is still an ongoing violation of the IDEA notwithstanding SB 819, then I don't understand how they're not challenging SB 819. Well, but, okay, who has the burden to show that this is moot? I do. Okay. Because you want to knock them out, say there's nothing left. And you got the presumption of mootness. Because SB 819, I mean, this is sort of a combined situation. But they weren't challenging 819. They were challenging Oregon's statewide... They were challenging Oregon's lack of centralized statewide policies to require data collection. All right, but that's not the same as challenging specific legislation, is it? Well, to me, it seems like substantively you're trying to challenge a substantive policy or a lack of a substantive policy. But 819 happened after their lawsuit, right? And implemented substantive policies at the statewide centralized level that were directly responsive to the harms that were identified in the complaint about mandating data collection, mandating monitoring and enforcement, creating the authority to withdraw funding. I guess we're talking around each other. To get the presumption of mootness, does it require that you're challenging specific legislation? It requires that the policy that was challenged has been repealed, I think. And the easiest situation that that happens is when you have a law and then the law is pulled away. But I don't think that, you know, that is the only situation in which it applies. Here we had the preexisting policy landscape that was challenged by plaintiffs, and we opposed that. We think we were compliant with the IDA all along. But in the course of discovery, in the course of the expert report, the Oregon Department of Education, which is concerned about students, took those recommendations seriously, began to implement those policies, and the Oregon legislature as well created, enacted an independent statute that was specifically designed to mandate data collection, monitoring, enforcement in this situation. All right, so what guarantees are there that promises of additional resources and training cannot be unilaterally withdrawn by the Oregon Department of Education? Because most of the mandates here are from the Oregon legislature and SB 819. And the Oregon Department of Education is not free to simply violate Oregon statute. That's the piece of it. Most of this comes, you know, I think the case law reflects that when you have a legislative intervention, it doesn't have to be just that, oh, you know, we enacted a statute, it was challenged, we pulled the plug on it. When you have a legislative intervention that reforms policy, that generally moots a claim challenging a prior policy. But I don't think they were challenging, was it SB 263, the older statute? I don't think they were saying, for example, provisions of SB 263 were facially unconstitutional and lawful. Then if the legislature, you know, revokes it, yes, it's moved. But I think what they were saying is that SB 263, how it's implemented has not led to an outcome that is permissible under Federal law. So I think we have to look at what SB 819 has done. Maybe it has solved all those problems, but we just don't know that. It's more of a merits question. Well, and I mean, there's that piece of it. I mean, just to, I think I'm approaching this from, and maybe this is missing where the Court's looking at it, but there's the policy landscape that existed before SB 819 and there's the policy landscape that exists after it. And to the extent that plaintiffs sought an injunction to force the Oregon Department, the State of Oregon, to basically exercise its discretionary policymaking function under the IDEA, Oregon has done that now. But what if the facts show that even though SB 819 has passed, you have all these kids who are on shortened days and they claim it's denying them a FAPE. I mean, isn't that, you know, it would still be a live controversy. But there's this distinction in the IDEA between the individualized claim where you're saying that this individual is denied FAPE on an individualized basis versus the systemic nature of plaintiff's claims, which are saying as a centralized, statewide matter, Oregon, you don't have sufficient policies to mandate data collection monitoring enforcement. Oregon came back and as a matter of statute said, okay, we're going to mandate data collection, we're going to mandate monitoring enforcement. And simultaneously with that, ODE had been already reforming, but then basically took its reforms and began aligning them with the mandate of SB 819. So, yes, there are, you know, the guidance materials that ODE has issued are, you know, not mandated by SB 819. But there's... So, hypothetically, and I'm saying hypothetically, if we were to vacate the dismissal, what steps would you take in the district court? Well, we would probably ask the district court to consider our motion for summary judgment, which we filed and which was pending at the time that the district court granted this motion to dismiss. I mean, I acknowledge the overlap between the merits and the mootness question, but I would suggest that if the notion that, you know, merits and mootness must never overlap were true, Rosebrock wouldn't exist. The whole notion of a government policy reform being a sound basis for a mootness decision, I don't understand how that could never include any sort of overlap on the merits. What it is... Let me put it to you this way, because I think I can, and you can correct me. There's a bunch of policies out there, all right? Plaintiffs say, those policies violate IDEA, okay? They violate it. You come along, and I say you, the legislature comes along, blesses SB 819, they fix some of those policies. But that doesn't mean, just because there's a new set of policies out there, that those combined don't violate the IDEA. Now, you said they're just seeking injunctive relief. As I understand their claim, they're saying, no, the policies and procedures you have violate IDEA. Now, it may be that they want specific relief that Oregon doesn't have to give them. They can say, no, that's covered under these policies. You may want this specific funding formula taken away, but that specific funding formula doesn't violate IDEA. So, separating the policies from their claim of, is there still a violation, how has that been resolved? Because of the systemic nature of their claim, right? Their claim is, Oregon, you don't have policies mandating data collection. So, they might then say, then we turn around and we enact a data collection policy. And they say, well, that's not a good enough policy. The plaintiff's premise in this case is that there's a live, and this is going back to my opening point about the Federal Judiciary not being a policymaking branch. The plaintiff's premise in this case is, any policy disagreement that they have with Oregon law is a live controversy and a factual question for the Federal Judiciary to sort through and then tell the State of Oregon what policy choices it has to make. Well, does the summary judgment have to make any determinations about FAPE? Whether I think the question for the Court on summary judgment is, are Oregon's policies that are in place, you know, meet the floor that's set by the IDEA? Are they, do they meet or exceed the floor that's set by the IDEA? Our position throughout has been we've always done that, but we've also sought to improve our system. But wouldn't they, wouldn't the trial court then have to reopen discovery a little bit to see if indeed, under your motion for summary judgment, whether SB 819 really does cure all or put enough policies together that now the system as a whole doesn't violate IDEA? I don't think so, because I don't understand the efficacy of a statewide legislative policy to be a factual question for a court. I mean, we can look at SB 819, you can look at the law that ODE has promulgated, and those are legal questions, essentially, about do these policies meet or exceed the floor set by the IDEA? And I fully understand that that's, you know, that's a merits question, we move for summary judgment, but it's also the case that the case law doesn't, you know, neatly resolve this tension between when you can't dismiss as moot because there's maybe an overlap with the merits, versus a government's policy reform being a sound basis for dismissal as moot when the government has shown that the prior challenged conduct is unlikely to be repeated. And the cases bear out that when the change stems from independent legislative action, that is very likely sufficient proof. Well, it was kind of shocking that, I was fairly shocked that they had all of these children that, you know, obviously had disabilities and the answer when, as it seemed to develop, the answer to it was then they got one hour of instruction as opposed to trying to somehow accommodate them so that they could be more mainstreamed. And there were a lot of you know, it's a little bit like when someone, sort of equated to me, like when someone complains that someone's harassing them and the way you solve the problem is you transfer the person that complained so they're not in the same place. I mean, it was kind of fairly shocking. You know, I'm in California and I've seen a lot of this in California. We do see it in other places but that the response really was to somehow, rather than try to accommodate the student first it was like, okay well you're just causing too much trouble so we'll just put you over here and then you get an hour and that's easier for us as opposed to looking at it otherwise. So it does seem like there's something the district court has to look at. I mean, SB 819 came along and recommitted Oregon to the broad notion that shortened school days should Well, it was a little shocking that before SB 819 that they thought that was okay. I don't think that, I wouldn't I don't think the record suggests that I don't think that would have ever made it very far in California. I don't think that the record bears out that anybody thought that there was a general sense that this was okay. I mean, everybody has been working hard to address this problem for years and litigation I think the people that do it care about it and the government but I think the problem always comes down to the federal government. The feds require you to do certain things, but they never give you enough money to do it. And then the people down at the other side of it it's not that they don't want to do what they probably have to do under the law, but they don't have the resources. But then on the other hand, then when it comes to court, if kids aren't getting what they're entitled to under a FAPE it's not that we have no sympathy for the people that are trying to do their best job with no resources. But that question right there whether kids are denied a FAPE is fundamentally not posed by the systemic nature of these claims. The claims here are about whether Oregon has in place legally compliant policies to carry out its general supervisory function. The focus has to be the challenged conduct is not the placement on inappropriate school days. The challenged conduct is Oregon's prior lack of sufficient statewide policies. That has to be the focus of what has, what is continuing or not. And Oregon as a state has reformed its policies, recommitted that shortened school days should only be used in narrow circumstances and that with an eye to returning the child to as much of a normal school day as possible. And that's in a legislative enactment. I think there's a difference in terms of how we're characterizing the claims here. You're saying they're just attacking the policies and saying we need different policies. I see their claim as saying you got policies out there. Some help, some don't. But the bottom line is there's still violations of IDEA and I think they're entitled to a determination on that regardless of what the individual policies. Because again, I think you're right. You may have a policy that covers something they want done. Whether it's the funding formula or not. But the bottom line is they may not be entitled to that because you already are meeting the requirements of IDEA. And I would just say it's hard for me to understand how the ability of the Federal courts to basically go to a level of granularity in deciding which policies are policy choices are right or not doesn't ultimately result. But we're here. Did you meet your burden on mootness? That's what we're here for. And if you didn't, it goes back. If you did, you get reaffirmed. And Oregon did because of the combination of SBA So we're not really micromanaging, but there are facts in this case that have been talked about. All right. Your time's up. Thank you. Your Honor, I don't have a lot to add. One thing I will mention is just again the quote the counsel referred to the overlap of facts and facts, merits, and mootness. I just want to quote from this court. The court cannot decide genuinely on disputed facts where questions of jurisdiction is dependent on factual issues going to the merits. The quote I have for that is Safe Air 373 F. 3rd at 1039. I think that here counsel also mentioned the Rosebrock case He seems to say we just go right to summary judgment if you go back. And Judge Lee asked you another question about that. What is the, what's your position? I would say under the circumstances right now additional discovery would be very proper. I think that right now given that things there is a dynamic situation and so I do think that would be appropriate. I think that I would need to take a look at that again and say. But I think that again I know that summary judgment is pending down below when this goes back down. But I think we would argue to the district court below that it shouldn't grant summary judgment. I think that's a decision the district court would probably have to make. So you'd agree some forms of relief that you are seeking may not be required under IDEA. That is possible, Your Honor, yes. Again though that is all bound up in the merits. I think it's really important here to make clear this is good people trying to do good things. I believe the Oregon Department of Education wants to do the right thing. I believe that the legislature want to do the right thing. I think SB 819 is good law that's trying to improve things. I think that it's important to remember though that in this case there had to be a neutral expert brought in before anything here, any reform at all happened. And that neutral expert gave a wide range of relief that in his expertise believed was necessary and some of that was adopted and that's appreciated and other aspects were not. And really what the state is doing here is abstracting this out to 40,000 feet and saying well they wanted things to be better and now they're better so therefore it's moot. That's not the mootness standard. There's still quite a bit of relief that can be granted. Alright, I think we understand both of your arguments and I think that it's clear that it's not a situation where anyone thinks anyone's got malevolent intent here that people are trying to do the best for but a lot of times we probably should give more money to do some of the things that we require people to do and I think probably all the school districts would probably say the same thing. They would welcome more money. I agree with that strongly, Your Honor. Thank you. We got the legal issues. Mootness. Thank you very much. Thank you. Thank you both for your helpful arguments. This matter will stand submitted.
judges: CALLAHAN, LEE, UNKNOWN